UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA BARANAU and GEORGE DELAFUENTE,<br><br>Plaintiffs,<br><br>v.<br><br>ALGUS PACKAGING, LLC,<br><br>Defendant. | NO. 1:25-CV-14129<br><br>Judge Edmond E. Chang |

## MEMORANDUM OPINION AND ORDER

Anna Baranau and George DeLaFuente allege that their former employer, Algus Packaging, LLC, fired them in retaliation for reporting workplace safety violations and for relaying complaints from female employees about sexual harassment. R. 1, Compl. at 1.[1] They sue Algus for retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); the Illinois Human Rights Act, 775 ILCS 5/6-101(A); the Illinois Whistleblower Act, 740 ILCS 174/15; and Illinois common law. Compl. ¶¶ 138–294.[2] Algus moves to dismiss Baranau's Title VII claim because she failed to plead that Algus was her employer, and to dismiss DeLaFuente's common law retaliatory discharge claim as duplicative of his statutory claims. R. 16, Def.'s Mot. at 9–13. Algus also moves to sever the two Plaintiffs' claims under Civil Rule 20(a). Def.'s Mot. at 6–9. The Court

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. Although Baranau and DeLaFuente label their pleading an "Amended Complaint," *see* Compl. at 1, it is the first and only complaint filed in this case.

[2]This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

denies Algus's motion to dismiss Baranau's Title VII claim and its motion to sever, but grants its motion to dismiss DeLaFuente's common law retaliatory discharge claim as superfluous.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Anna Baranau and George DeLaFuente each worked for Algus's Human Resources department during different months in the winter of 2024–2025. Compl. ¶¶ 14, 72. Both regularly worked at Algus's office and facilities, including one of its manufacturing facilities, Plant One. *Id.* ¶¶ 18, 73.

Algus hired Baranau as a Human Resources Manager through a third-party staffing agency in November 2024. *Id.* ¶¶ 14–15. Within her first month, an employee reported to Baranau that she and other female employees had been sexually harassed by a supervisor at Plant One, Julio Dominguez. *Id.* ¶¶ 34–35. That employee also told Baranau that Dominguez's manager, Mike Barker, had ignored and discouraged employees' complaints about Dominguez. *Id.* ¶¶ 36–38. In December 2024, Baranau relayed these concerns to Algus's Chief Financial Officer, John Mathis, and requested the issuance of company training and policies on sexual harassment. *Id.* ¶¶ 39–44. But afterwards, Mathis restricted Baranau's hours at Plant One, attributing the decision to Mike Barker and Algus's Vice President of Operations, Leslie Parker. *Id.* ¶¶ 45–49. On another visit to the plant on January 3, 2025, other employees complained to Baranau that Algus continued to ignore their reports of sexual harassment

from Dominguez. *Id.* ¶¶ 50–55. The same day, Baranau followed up with Mathis about the complaints. *Id.* ¶¶ 58–60. But the next day, the staffing agency informed Baranau that Algus had fired her. *Id.* ¶¶ 61–62.

A few weeks after Baranau's termination, Algus hired DeLaFuente as the Human Resources Director. Compl. ¶ 72. DeLaFuente quickly became aware of the complaints about sexual harassment by Julio Dominguez. *Id.* ¶ 77. DeLaFuente obtained written statements from employees who reported the harassment and sent them to Algus's management. *Id.* ¶¶ 83–86. DeLaFuente later learned that an employee who had requested a shift-change to avoid Dominguez had been moved back to work under Dominguez's supervision. *Id.* ¶¶ 88–89. DeLaFuente confronted Parker about this decision. *Id.* ¶¶ 90–92. DeLaFuente also raised the harassment complaints to Algus's Chief Executive Officer, Roderick MacNeille. *Id.* ¶ 96. DeLaFuente says that MacNeille dismissed the complaints, responding that the women were "all lying." *Id.* ¶ 97.

During his time at Algus, DeLaFuente also observed violations of the Occupational Safety and Health Act (which the parties refer to as OSHA), 29 U.S.C. § 651 *et seq.*, at Plant One. Compl. ¶ 104. For example, DeLaFuente saw an employee operating machinery without proper training, which could have resulted in severe injury. *Id.* ¶ 105. DeLaFuente reported these violations via email to Parker (the VP of Operations) and CEO MacNeille. *Id.* ¶¶ 106–07. DeLaFuente also learned that Parker had failed to properly report several injuries sustained by Algus employees to the Occupational Safety and Health Administration. *Id.* ¶¶ 120–21, 125. On April 3, 2025, DeLaFuente asked Parker about her failure to report these injuries. *Id.* ¶¶ 122–24.

Later that day, DeLaFuente met with Parker and MacNeillle to discuss the OSHA violations and the lack of reporting. *Id.* ¶ 119. DeLaFuente also had extensive phone calls with Mathis about the sexual-harassment and OSHA issues. *Id.* ¶ 128. A few days later, on April 8, 2025, DeLaFuente met with MacNeille and Mathis, who fired him. *Id.* ¶¶ 129–130.

Baranau and DeLaFuente filed charges of retaliation with the Equal Employment Opportunity Commission. Compl. ¶¶ 140, 185. They both received Right to Sue letters and timely filed a Complaint against Algus. *Id.* ¶¶ 142, 187.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

claim for relief will ... be a context-specific task." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

### A. Motion to Dismiss

#### 1. Baranau's Title VII Claim

First up is Algus's motion to dismiss Baranau's Title VII claim. Def.'s Mot. at 9–11. A Title VII claim requires the plaintiff to allege an "employer-employee relationship." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). Algus was not Baranau's direct employer because she was hired through a third-party staffing agency. Compl. ¶ 15. But even when a company is not a plaintiff's direct employer, the plaintiff can still allege Title VII liability under a "joint employer" theory. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928–29 (7th Cir. 2017). Under this theory,

a plaintiff can have multiple employers—each of whom is the plaintiff's employer for the purposes of Title VII liability—if the employers exercise sufficient control over the plaintiff's role. *Frey v. Coleman*, 903 F.3d 671, 676 (7th Cir. 2018). The Seventh Circuit evaluates whether an employer has adequate control to be a joint employer using the "economic realities" test, which considers five factors: (1) the extent of the employer's control and supervision over the employee; (2) the kind of occupation and nature of skill required, including whether skills were acquired on the job; (3) the employer's responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment. *Id.* (citing *Knight v. United Farm Bureau Mutual Insurance Co.*, 950 F.2d 377, 378–39 (7th Cir. 1991)). "Of these factors, the employer's right to control is the most important," and must be given the most weight. *Id.* (cleaned up).

Here, Algus argues that Baranau failed to allege facts that raise a reasonable inference that she was jointly employed by Algus and the staffing agency. Def.'s Mot. at 9–11. Instead, Algus says that the Complaint's factual allegations show that Baranau was merely an independent contractor, and thus Algus cannot be liable for any alleged retaliation under Title VII. *Id.*[4]

[4]In support of its motion to dismiss, Algus attaches and references a certified statement that Baranau attached to her charge of retaliation with the Commission. *See* R. 16-2, Def.'s Exh. A, Baranau Cert. Statement. But generally, when ruling on a 12(b)(6) motion to dismiss, a court considers only the factual allegations in the Complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). There is a limited exception under which courts may consider "documents attached to a motion to dismiss … if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). But that exception does not apply here because Baranau does not

To evaluate Algus's argument, the Court considers the five factors in the economic realities test. The first and most important factor is Algus's control over Baranau. She says that she worked exclusively at Algus's office and plant facilities. Compl. ¶ 18. She had to follow Algus's policies and procedures, including its policies about confidential information, workplace conduct, and safety protocols. *Id.* ¶ 26. Algus determined her work schedule and hours; if Baranau wanted time off, Algus approved or denied her requests. *Id.* ¶¶ 23–24. Baranau reported exclusively to Algus's management, including Mathis and other members of senior leadership. *Id.* ¶ 20. Algus—not the staffing agency—evaluated Baranau's job performance. *Id.* ¶¶ 21, 29. And Baranau alleges that Algus determined and supervised all of her day-to-day responsibilities. *Id.* ¶ 22. For example, after Baranau reported the sexual-harassment complaints to Mathis, Algus limited the hours that she could spend at Plant One—not the staffing agency. *Id.* ¶¶ 45–48. Finally, when Baranau was fired, that decision was made by Algus, not the agency. *Id.* ¶¶ 28, 61–62, 64–65. These allegations strongly suggest that Algus completely controlled and supervised Baranau's work, supporting a conclusion that Algus was her joint employer. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 905 (7th Cir. 2018) (concluding that the power to hire and fire suggested that the defendant was an employer). Algus contends that Baranau's employment relationship was with the staffing agency, not Algus, because after her termination the staffing agency was unable to find her new employment. Def.'s Mot.

---

reference her certified statement in the Complaint. In any event, even if the Court were to consider the statement, it contains the same factual allegations as the Complaint itself.

at 10. But the existence of an employment relationship with the staffing agency—which Baranau has readily admitted—does not disprove that Algus was *also* her joint employer. *See Bridge v. New Holland Logansports, Inc.*, 815 F.3d 356, 361 (7th Cir. 2016).

For the second factor, Baranau alleges only that she was a Human Resources Manager, without further allegations about her particular responsibilities. *See* Compl. ¶¶ 14–71. She does not allege that Algus provided her with specific training for her role. *See generally id.* Algus contends that Baranau "was retained to provide specialized, temporary human resources services, which constitutes discrete project work outside Algus's regular manufacturing operations that is characteristic of an independent contractor." Def.'s Mot. at 10. But no factual allegations in the Complaint support this characterization of Baranau's role. *See id.* (citing Compl. ¶¶ 9, 14–16 (alleging only that Baranau was hired as a Human Resources Manager)). Algus cannot inject outside facts into the pleading stage. Thus, the second factor is neutral, and does not weigh in favor or against whether Algus was an employer under Title VII. *See Wells v. Freeman Co.*, 94 F.4th 608, 617 (7th Cir. 2024) (holding that this factor is neutral when there are no clear distinctions between the skills of employees and contractors).

On the third factor—that is, the plaintiff's responsibility for the costs of operation—Baranau alleges that Algus provided her with the equipment, software, and office supplies necessary to perform her job. Compl. ¶ 19. Thus, this factor weighs in Baranau's favor. *See Advocate*, 892 F.3d at 906.

On the fourth factor, there are factual allegations in the Complaint that cut both ways. Baranau says that the staffing agency served as a payroll service and processed her salary payments. Compl. ¶ 15. Algus relies heavily on this fact to argue that it was not Baranau's employer. *See* Def.'s Mot. at 10. But importantly, Algus—not the staffing agency—determined Baranau's actual rate of pay and compensation. *Id.* ¶ 17. Thus, the staffing agency's role in her payment was merely administrative. *See id.* ¶ 15. So this factor still weighs in favor of the conclusion that Algus was Baranau's joint employer with the staffing agency. *Advocate*, 892 F.3d at 906 (concluding that this factor "point[ed] to [the defendant] as the employer" because the defendant "paid the plaintiffs' salaries").

Finally, on the fifth factor, Baranau alleges that she was unaware of whether her employment with Algus had a definite end date. Compl. ¶ 27. Algus argues that Baranau had a "fixed-duration assignment." Def.'s Mot. at 10. But again, there is no support for this characterization in the Complaint. *See id.* (first citing Compl. ¶¶ 14, 61–62 (alleging only that Baranau was hired as a Human Resources Manager in November 2024 and that she was fired in January 2025); and then citing Cert. Statement ¶ 5).[5] Algus points out that Baranau's employment ultimately lasted only two months. Def.'s Mot. at 10. But the ultimate length of her employment is not relevant; what matters is Baranau's expectations about the length of her employment. Thus,

[5]Even if the Court were to consider Baranau's certified statement, it does not support Algus's contention. *See* Cert. Statement ¶ 5 ("I did not have a pre-determined end date to my assignment with [Algus] or with my contract with the third-party staffing service.").

the absence of a predetermined end date weighs in Baranau's favor. *Bridge*, 815 F.3d at 362–63; *Advocate*, 892 F.3d at 906.

In sum, four of the five factors weigh in favor of concluding that Algus was Baranau's joint employer. Most importantly, the first factor—Algus's control and supervision over Baranau—weighs heavily in Baranau's favor. Because Baranau has plausibly alleged that Algus had sufficient control over her to qualify as a joint employer, the motion to dismiss her Title VII claim is denied.

**2. DeLaFuente's Common Law Retaliation Claim**

Next, Algus contends that DeLaFuente's retaliatory discharge claim must be dismissed as duplicative of his statutory claims. Def.'s Mot. at 12–13. In Illinois, "[a] discharged employee may sue her employer for the common law tort of retaliatory discharge if her discharge was in retaliation for certain actions that are protected by the public policy of Illinois, including retaliation for complaints about an employer's unlawful conduct." *See Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 940–41 (7th Cir. 2002). But a plaintiff cannot bring a common law retaliatory discharge claim if "an adequate alternative remedy" exists under a statute. *Stebbings v. Univ. of Chi.*, 726 N.E.2d 1136, 1141 (Ill. App. Ct. 2000). Thus, courts in this District have routinely granted dismissal of a plaintiff's common law retaliatory discharge claim when the plaintiff also brought statutory claims based on the same alleged retaliatory conduct. *See Zwick v. Inteliquent, Inc.*, 83 F. Supp. 3d 804, 809 (N.D. Ill. 2015) (collecting cases); *see, e.g.*, *Putnam v. CaramelCrisp LLC*, 2020 WL 14079454, at *2–3 (N.D. Ill. Sept. 1, 2020).

Here, DeLaFuente says that he was fired in retaliation for reporting activities that he reasonably believed to violate state and federal law, and because Illinois prohibits those activities, his termination was contrary to Illinois public policy. Compl. ¶ 261. Specifically, he alleges that he was fired for complaining about criminal battery, 720 ILCS 5/12-3, criminal sexual abuse, 720 ILCS 5/11-1.40, and compliance with OSHA safety requirements and reporting guidelines. Compl. ¶¶ 262–80.

As an initial matter, the criminal sexual abuse statute is inapplicable. The statute prohibits sexual abuse of minors. 720 ILCS 5/11-1.40 ("Predatory criminal sexual assault of a child."). But DeLaFuente does not allege any facts that indicate the Algus employees who complained about sexual harassment were minors. *See generally* Compl.

More importantly, even assuming that Illinois has public policies against the activities about which DeLaFuente complained, his statutory claims provide an adequate remedy to vindicate those public policies. Title VII and the Human Rights Act prohibit and deter sexual harassment. *See Sanchez v. El Milagro, Inc.*, 176 F.4th 961, 968 (7th Cir. 2026). Although sexual harassment is not identical to battery and sexual abuse, the underlying factual predicate is the same: Dominguez's inappropriate touching of female employees. Compl. ¶ 266. And both Title VII and the Human Rights Act ban retaliation for reporting on alleged sexual harassment. 42 U.S.C. § 2000e-3(a); 775 ILCS 5/6-101(A)(i). So DeLaFuente's claims under Title VII and the Human Rights Act will remedy the same issue—his alleged termination in retaliation for reporting Dominguez's behavior—as his common law claim. The Whistleblower

Act protects employees from being fired in retaliation for reporting to their supervisors alleged violations of federal law, 740 ILCS 174/15(c), such as violations of OSHA. So again, DeLaFuente's claim under that statute will cover the same issue as his common law claim. Thus, the three statutes provide adequate remedies for the conduct alleged in DeLaFuente's retaliatory discharge claim, making the common law claim superfluous.

In DeLaFuente's response, he incorrectly characterizes Algus's argument as one about preemption. R. 22, Pls.' Resp. at 9–11. To be clear, the Court does not conclude that common law retaliatory discharge claims are categorically preempted by Title VII, the Human Rights Act, or the Whistleblower Act. Instead, in accordance with Illinois case law, DeLaFuente can only bring his common law claim when no adequate remedy exists in a statute. *See Stebbings*, 726 N.E.2d at 1141. And here, the Court determines that the three statutes provide an adequate remedy, so his common law claim is superfluous.

DeLaFuente also argues that the statutes provide an inadequate remedy because he can only seek uncapped punitive damages under the common law claim. Pls.' Resp. at 11–12; *see Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359–60 (Ill. 1978) (holding that plaintiffs can receive punitive damages for common law retaliatory discharge claims); 42 U.S.C. § 1981a(b)(3) (capping the amount of punitive damages a plaintiff can receive under Title VII); 775 ILCS 5/8A-104 (describing the relief that can awarded for violations of the Human Rights Act, which does not include punitive damages); 740 ILCS 174/30 (describing the relief that can be awarded for violations

of the Whistleblower Act, which does not include punitive damages). "Illinois courts do not require the statutory remedy to be *identical* to the common law remedy in order for the common law remedy to be prohibited, but merely that a statute provides an *alternative* remedy." *Zwick*, 83 F. Supp. 3d at 809 (emphasis in original). So even if the statutes do not provide for unlimited punitive damages, their other penalties are a sufficient deterrent to provide an adequate remedy. Indeed, in some respects, the statutes actually provide *greater* remedies than the common law, such as attorneys' fees for prevailing plaintiffs. *See id.*; *see also Hertzberg v. SRAM Corp.*, 261 F.3d 651, 658–59 (7th Cir. 2001) (describing how plaintiffs can seek backpay, compensatory and punitive damages, and equitable relief, among other remedies, under Title VII); 775 ILCS 5/8A-104 (describing how plaintiffs can receive backpay, compensatory damages, attorneys' fees, and equitable relief under the Human Rights Act); 740 ILCS 174/30 (describing how plaintiffs can receive backpay, liquidated damages, attorneys' fees, and equitable relief under the Whistleblower Act).

**B. Motion to Sever**

Lastly, the Court turns to Algus's motion to sever the Plaintiffs' claims. *See* Def.'s Mot. at 6–9. Under Civil Rule 20(a), joinder of multiple plaintiffs in one action is permitted when (1) the plaintiffs assert any right to relief that arises out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). When considering permissive joinder of plaintiffs under Civil Rule 20(a),

district courts are afforded wide discretion. *See Intercon Rsch. Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982).

**1. Same Transaction or Occurrence**

In employment-discrimination cases, given the fact-intensive nature of what makes up a transaction or occurrence, federal courts generally proceed on a "case-by-case approach" to determine "whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20." *Bailey v. N. Tr. Co.*, 196 F.R.D. 513, 515 (N.D. III. 2000). Under this approach, the following set of factors is useful guidance:

> [1] The time period during which the alleged acts occurred, [2] whether the acts of discrimination are related, [3] whether there were differing types of adverse employment actions, [4] whether more than one type of discrimination is alleged, [5] whether the same supervisors were involved, [6] whether employees worked in the same department, [7] whether employees were at different geographical locations, and [8] whether a company-wide policy is alleged.

*McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 694 (N.D. Ill. 2009) (cleaned up). Based on these factors, courts in this District typically conclude that plaintiffs' discrimination claims do not arise out of the same transaction or occurrence if the alleged incidents involved "different employment decisions made by different people at different times." *Nelson v. Chertoff*, 2008 WL 4211577, at *5 (N.D. Ill. Sept. 10, 2008).

On the first factor, Baranau and DeLaFuente's respective periods of employment did not overlap. *See* Compl. ¶¶ 61–62 (Baranau fired on January 4, 2025); *id.* ¶ 72 (DeLaFuente hired on January 27, 2025). But DeLaFuente was hired mere

weeks after Baranau was fired. *See id.* And the alleged retaliatory acts—the termination of both Plaintiffs—occurred within the span of just a few months. *See id.* ¶¶ 61–62 (Baranau fired in January 2025); *id.* ¶¶ 129–30 (DeLaFuente fired in April 2025). Because the alleged acts occurred close in time to each other, the first factor favors joinder. *See Nelson*, 2008 WL 4211577, at *6 (concluding that the first element is met where the alleged acts primarily occurred during the same span of four years); *see also Byers v. Ill. State Police*, 2000 WL 1808558, at *4 (N.D. Ill. Dec. 6, 2000) (describing how "courts look to whether the discrimination took place at roughly the same time").

Turning to the second factor, both Plaintiffs reported to Algus management complaints about Dominguez's sexual harassment at Plant One. Compl. ¶¶ 34, 39–40, 77, 87, 96, 106–07. So although the actual termination of the Plaintiffs involved formally separate acts, both firings were in response to the Plaintiffs' reports about the *same* underlying sexual harassment. Indeed, to support their claims, both Plaintiffs likely would offer evidence about the same underlying sexual harassment to demonstrate Algus's motive for firing them. Both Plaintiffs also allege that, before their termination, Algus responded to their reports in the same way: they were ignored and even stonewalled by Algus management. *Id.* ¶¶ 42–45, 88–93, 96–97. Thus, although the terminations of each Plaintiff are separate acts in a formal sense, the alleged context and motivation for the firings are closely related. So the second factor also favors joinder. *See Smith v. Ne. Ill. Univ.*, 2002 WL 377725, at *3–4 (N.D. Ill. 2002) (acknowledging that the plaintiffs' allegations of retaliation "are factually

distinct," but concluding that "they arise as a result of plaintiffs' complaints of a hostile work environment," and thus arise out of the same transaction or occurrence).

The third and fourth factors also weigh in favor of joinder. Algus took the same adverse employment action against both Plaintiffs: it fired them. Compl. ¶¶ 61–62, 129–30. And the alleged retaliatory discharge is the only adverse employment action alleged by either Plaintiff. *See id.* ¶¶ 138–294.

The fifth factor concerns whether the same supervisors were involved. Baranau says that she reported the sexual-harassment complaints to Algus's Chief Financial Officer, John Mathis. Compl. ¶¶ 39–40, 58–60. DeLaFuente reported the complaints to the Chief Executive Officer, Roderick MacNeille; Vice President of Operations, Leslie Parker; and Mathis. *Id.* ¶¶ 91–93, 106–07, 126–28. So Baranau and DeLaFuente reported to a slightly different set of supervisors. But Mathis was a common denominator for both Plaintiffs. And based on their titles, all three individuals—MacNeille, Mathis, and Parker—appear to be part of Algus's senior management team. Several of the Complaint's allegations suggest (not surprisingly) that the members of the senior management team frequently communicated with each other and made decisions together. *See id.* ¶ 47 (allegation that Mathis's restriction on Baranau's hours at Plant One was made at Parker's insistence); *id.* ¶ 119 (allegation that DeLaFuente met with Parker and MacNeille to discuss the OSHA violations); *id.* ¶¶ 129–30 (allegation that DeLaFuente was fired in a meeting with MacNeille and Mathis). Thus, although the alleged retaliation did not involve the exact same supervisors, there was significant overlap in the involvement of the same few supervisors.

So this factor also weighs in favor of joinder. *See Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 230 (N.D. Ill. 2002) (holding that this factor was met in part because the plaintiffs' allegations "appear generally to accuse the same set of supervisors at the same work location"); *McDowell v. Morgan Stanley & Co., Inc.*, 645 F. Supp. 2d 690, 697 (N.D. Ill. 2009) (describing how joinder might be appropriate if "individual supervisors acted in concert with one another" or "consulted with one another").

The sixth and seventh factors clearly favor joinder. Baranau and DeLaFuente both worked for the Human Resources department. Compl. ¶¶ 14, 72. And they both worked at the same geographic locations: Algus's office and Plant One. *Id.* ¶¶ 18, 73.

Finally, the eighth factor concerns whether the Plaintiffs alleged a company-wide policy. Again, because Baranau and DeLaFuente do not allege that they themselves were subject to a hostile work environment, they do not formally allege a company-wide policy as part of their retaliation claims. But because the same sexual harassment underlies both of their claims, their suits share the same premise: that Algus had a company-wide hostile work environment based on sexual harassment that the management team failed to address. What's more, as explained above, senior company executives (including the CFO and CEO) are alleged to have engaged in the retaliation, so even though there is no alleged explicit company-wide policy of retaliation, the same senior executives allegedly covered up the harassment. So the eighth factor also favors joinder. *See Smith*, 2002 WL 377725, at *3–4; *see also Hawkins*, 210 F.R.D. at 230.

In sum, the Complaint alleges that both Baranau and DeLaFuente engaged in the same protected activity and experienced the same retaliatory discharge in response—in other words, their claims arise out of the same series of transactions or occurrences. Because all eight factors weigh in favor of joinder, Civil Rule 20's first element is met.

**2. Common Question of Law or Fact**

For the second element, joinder is permissible if "*any* question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(B) (emphasis added). "The common question need not predominate …." *Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011). Allegations of a companywide policy of discrimination or hostile work environment can establish a common question of fact even when individual plaintiffs experienced different impacts from that policy or environment. *See Nelson*, 2008 WL 4211577, at *5.

Again, both Plaintiffs allege that Algus had a sexual-harassment problem at Plant One and that senior management ignored it and covered it up. *See supra* Section III.B.1. And the Plaintiffs allege that they were both fired for the same reason: in retaliation for reporting the unaddressed sexual harassment. *See id.* This raises a question of fact common to both Plaintiffs: did Algus's management retaliate against the Plaintiffs for reporting and investigating allegations of sexual harassment? Thus, the second element is also met. Because both elements of Civil Rule 20(a) are met, joinder is permissible.

Indeed, the common question of fact demonstrates why in this case, joinder is not only permissible, but sensible. To answer the common question of fact, both Baranau and DeLaFuente must engage in overlapping discovery. For example, they will likely request many of the same documents and depose many of the same witnesses. Algus disagrees, arguing that joinder "would create a substantial risk of jury confusion and unfair prejudice" because each Plaintiff's case raises a different set of issues and evidence. Def.'s Mot. at 8–9. But even if Baranau and DeLaFuente had brought *separate* suits, the Court would likely permit each Plaintiff to use evidence about the other's experiences because they are highly relevant to showing Algus's response to the sexual-harassment complaints and its intent when firing the Plaintiffs. *See Hawkins*, 210 F.R.D. at 230. "Under these circumstances, there would be no added prejudice" from joinder, *id.*, which will promote "economy and convenience," *Nelson*, 2008 WL 4211577, at *6. Because the Court has wide discretion over joinder, and concludes that joinder is the right approach in this case, Algus's motion to sever is denied.

## IV. Conclusion

Algus's motion to dismiss, R. 16, is denied for Baranau's Title VII claim, but it is granted for DeLaFuente's common law retaliatory discharge claim, which is dismissed. The dismissal is without prejudice for now, but it is difficult to envision how DeLaFuente can fix the claim given the available statutory remedies. In any event, the Court will set a Civil Rule 16(b) deadline for amending pleadings when setting the discovery schedule. The parties shall confer and file a joint status report by

September 14, 2026, proposing a schedule using the joint initial status report template, R. 4-1. Algus's motion to sever, R. 16, is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 5, 2026